NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL CARDONA ADAMES, | Civil Action No.: 2:12-cv-05150 (CCC) |
| Claimant, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

I.   **INTRODUCTION**

Before the Court is Claimant Samuel Cardona Adames's ("Claimant") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") partially denying his application for disability benefits under the Social Security Act. The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, this Court affirms the Commissioner's decision.

II.   **BACKGROUND**

A.   **Procedural Background**

On October 27, 2008, Claimant filed a Title II application for a period of disability and Disability Insurance Benefits ("DIB"). (Tr. 18, 119-23.) On October 30, 2008, Claimant filed a Title XVI application for Supplemental Security Income ("SSI"). (*Id.* at 18.) In both applications, Claimant alleged disability beginning November 14, 2005. (*Id.*) Both applications were denied initially (*id.* at 72-76) and on reconsideration (*id.* at 81-83). On September 22, 2010, a hearing

was held before Administrative Law Judge ("ALJ") Leonard Olarsch. (*Id.* at 31-57.) On October 25, 2010, the ALJ issued a Partially Favorable decision, finding that Claimant was not disabled during the period that lasted from November 14, 2005 (Claimant's alleged disability date) through December 31, 2005 (the last date he was insured for DIB), but that Plaintiff became eligible for SSI disability benefits beginning October 30, 2008 (the date he filed his application for SSI). (*Id.* at 14-26.) After Claimant sought review from the Appeals Council, on June 20, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review. (*Id.* at 1-4.) Claimant then commenced this action on August 15, 2012. (ECF No. 1.)

**B.    Factual Background**

Claimant was born on May 20, 1962. (*See* Tr. 689.) Claimant was injured in a motor vehicle accident on October 14, 2005 when he was hit from behind by another vehicle. (Tr. 224.) Claimant's medical history[1] reveals that he suffered back[2] and neck[3] injuries resulting from the

---

[1] The ALJ's decision and the parties' briefs contain detail as to the particular injuries that Claimant has suffered as well as descriptions of his pain and his numerous treatments. For purposes of this simplicity, the Court will note exemplary discussions in the footnotes.

[2] The ALJ's decision states that "[t]he results of nerve conduction studies were consistent with L5 radiculopathy and the results of a lumbosacral MRI scan showed disc bulging at L1-2, L2-3 and L3-4 levels with minimal bulging at L4-5 level and a small disc herniation at the L5-S1 level." (Tr. 21 (citing Tr. 201, 206, ).) Claimant's brief summarizes his back injuries as "disc bulges L1-2, 2-3, 3-4, 4-5; disc herniation l5/S1; L5 radiculopathy proven on MRI and EMG." (ECF No. 7 at 9.)

[3] The ALJ noted that Claimant's neck injuries included "mild disc bulges at the C3-4 and C5-6 levels with no evidence of cord abnormality or foraminal encroachment." (Tr. 21 (citing Tr. 200).) Claimant argued that he "suffers cervical disc derangement at C4-C5 and C5-C6 with left cervical joint arthropathy" as well as "both a left-sided C5 radiculopathy" and "bilateral L5 radiculopathy confirmed on EMG." (ECF No. 7 at 10.)

accident. As a result of these injuries, Claimant has suffered back and neck pain.[4] Claimant has

undergone a variety of treatments for these injuries including physical therapy, injections and

surgeries.[5]

In January 2009, Claimant was diagnosed with an adjustment disorder with depressive

features. (Tr. 21.) He was under the care of Raritan Bay Mental Health Center and was prescribed

psychotropic medication. (*Id.*)

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its]

own factual determinations," but must give deference to the administrative findings. *Chandler v.

Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless,

the Court must "scrutinize the record as a whole to determine whether the conclusions reached are

rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir.

1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667

---

[4] The ALJ noted that Claimant testified that "he has 'a lot' of pain in his lower back radiating to his right leg and that both legs are numb." (Tr. 22.) Claimant points out that Claimant had complained in May 2007 "of sever lower back pain of '1 ½ years' duration.'" (ECF No. 7 at 10 (citing Tr. 232-35).)

[5] The ALJ discussed Plaintiff's testimony regarding "physical therapy and injections" as well as surgery. (Tr. 22.) The ALJ noted that Claimant "underwent a series of facet branch radio frequency ablations, which he completed in October 2006." (Tr. 22.) Claimant's brief discusses numerous surgeries, including "a right L4, L5 and S1 facet medial branch radiofrequency ablation" and the same procedure on the left side. (ECF No. 7 at 10.) Claimant also focuses on Claimant's "failed lumbar fusion surgery in September 2008." (*Id.* at 9.)

F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.   Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a claimant must show that he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v.*

4

*Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382a(3)(D).

Under Title II of the SSA, DIB may not be paid unless a claimant becomes disabled while he meets the insured status requirements of 42 U.S.C. § 423(c). Therefore, a claimant must prove that his disability commenced on or before the last day on which he met the insured status requirements. *See* 42 U.S.C. § 423(a); 20 C.F.R. § 404.131; 20 C.F.R. § 404.315; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) ("a claimant must show that he was insured under the program at the time of onset of his disability").

### C.    Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform.

*Id.*

The evaluation continues through each step unless it is determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

IV.     **DISCUSSION**

The question to be determined by this Court is whether there is substantial evidence to support the ALJ's finding that Claimant is not entitled to benefits prior to October 30, 2008. Accordingly, the Court's discussion will focus on the factual and legal issues pertaining to that question. The Court will only address factual and legal issues pertaining to the time period after October 30, 2008 to the extent they are relevant to the question that is before the Court.

A.     **Summary of the ALJ's Findings Relevant to the Time Period Prior to October 30, 2008**

As a threshold issue, the ALJ found that Claimant met the insured status requirements of the SSA through December 31, 2005. (Tr. 20.) At step one, the ALJ found Claimant has not engaged in substantial gainful work activity since the alleged onset date of the alleged disability. (*Id.*)

At step two, the ALJ made a distinction between the "alleged" onset date—November 14, 2005—and the "established" onset date—October 30, 2008. (*Id.* at 20-21.) The ALJ found that Claimant has had the severe impairment of lumbosacral disc disease since the alleged onset date, November 14, 2005. (*Id.*) The ALJ found that Claimant has had the severe impairments of "status-post lumbosacral surgery with chronic pain syndrome, secondary depression and a history of substance abuse, in remission" since the established onset date, October 30, 2008. (*Id.* at 21.)

However, the ALJ found that "[t]he record does not establish any objective evidence regarding a mental impairment through his date last insured of December 31, 2005." (*Id.*)

At step three, the ALJ found that since the alleged onset date of disability, November 14, 2005, Claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) Regarding, Claimant's physical injuries, the ALJ found that the evidence does not establish nerve root compression or neurological deficits. (*Id.*)

In determining Claimant's Residual Functional Capacity ("RFC"), the ALJ concluded that prior to the established onset date of disability, October 30, 2008, Claimant had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). (*Id.*) In making that determination, the ALJ followed the two-step process of first considering Claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and then considering the intensity, persistence, and limiting effects of the symptoms. (*Id.* at 22.) Specifically, the ALJ considered Claimant's complaints of limitations (including lifting, sitting, standing, climbing stairs, driving, bending, and sleeping) due to a low back injury. (*Id.*) The ALJ considered Claimant's testimony regarding his pain and numbness in his back and legs and that medical treatment helped in the short-term but not the long-term. (*Id.*) The ALJ found that Claimant's medically determinable impairment could reasonably be expected to cause Claimant's symptoms. (*Id.*) However, in the second step of the RFC determination, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (*Id.*) The ALJ found that the evidence did not establish a level of pain to preclude all work activity, in particular, because the evidence demonstrated that Claimant responded well to physical therapy and showed improvement in range

of motion and functional level during the relevant time period. (*Id.* at 22-23.) The only opinion evidence through the date last insured was unfavorable toward Claimant, as Dr. Khanthan assessed that Claimant had no limitations in lifting, carrying, standing, walking, pushing, or pulling—and, in fact, the ALJ did not give that assessment any weight because Dr. Kanthan had reported findings of lumbosacral tenderness and spasm as well as limitation of motion. (*See id.* at 22.)

At step four, the ALJ found that, since the alleged onset date, November 14, 2005, the demands of Claimant's past work exceed Claimant's RFC. (*Id.* at 24.) Finally, at step five, the ALJ considered Claimant's age, education, work experience, and RFC prior to the established onset date, October 30, 2008, and concluded that Claimant had the ability to work in jobs that existed in significant numbers in the national economy. (*Id.*) The ALJ emphasized that prior to the established onset date, Claimant was a younger individual age 18-49 and Claimant has a high school education and can communicate in English. Thus, the ALJ concluded that for the period prior to October 30, 2008, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21. (*Id.*)

**B.    Analysis**

Claimant makes both general and specific arguments regarding the ALJ's decision. Generally, Claimant argues that the ALJ's decision is illogical because it assumes that Claimant was not disabled from his physical injuries and then arbitrarily became disabled from psychological injuries two months after surgery on October 30, 2008. (*See* ECF No. 7 at 9.) Plaintiff then argues, more specifically that the ALJ's decision should be reversed because: (1) the ALJ incorrectly determined that Claimant does not suffer a severe impairment to his cervical spine; (2) the ALJ incorrectly determined that the Claimant is not the medical equivalent of the Commissioner's listings; and (3) the ALJ's RFC for light work and sedentary work is not explained

8

in the decision or justified by the evidence and the required pain evaluation is not based on the medical evidence of record. (*See* ECF No. 7.) The Court will address each argument in turn.

> 1. **Claimant's general argument regarding the onset date of the disability is unavailing.**

Claimant argues that it would be illogical for the ALJ to determine that the physical injuries and treatments did not render Claimant disabled but that a psychiatric disorder two months after surgery did. (*See* ECF No. 7 at 9-11.) Claimant contends:

> Yet, notwithstanding all of the evidence the ALJ found that plaintiff could perform light work from the date of the accident in November, 2005 through two surgical disc ablations and a lumbar fusion. Two months after the lumbar fusion the ALJ reduced his RFC to sedentary work. None of this is explained and indeed all of this is unexplainable.

(*Id.* at 11.) However, as Defendant points out, this argument mischaracterizes the facts and ignores the crucial dispositive fact that there are two separate time periods at issue.

It is undisputed that Claimant's date last insured for DIB was December 31, 2005. (Tr. 18-19.) The ALJ found that Claimant was not disabled prior to that date. (Tr. 21-23.) As Defendant argues, upon the ALJ's determination that Claimant failed to meet the burden of showing that he was disabled prior to December 31, 2005, all alleged events are irrelevant until Plaintiff became eligible for SSI on the date he protectively filed his application—October 30, 2008. (*See* ECF No. 13 at 6.) Thus, while Claimant's treatments and surgeries in 2006, 2007, and 2008 may have rendered him "disabled" in a colloquial sense, they cannot support a disability onset date because Claimant was ineligible for DIB or SSI at those times. In fact, after December 31, 2005, Claimant's earliest possible disability onset date was October 30, 2008—the date that the ALJ ultimately determined to be the disability onset date.

Therefore, contrary to Claimant's arguments, the ALJ's decision does not indicate any

finding regarding what Claimant could or could not do "throughout the three years between [Claimant]'s accident and his lumbar fusion and for two months thereafter." (*See* ECF No. 7 at 10.) Rather, the ALJ's decision reflects the correct determination that, because Claimant was ineligible during that time period, the sequential evaluation process would be irrelevant for that time period.

### 2.   The ALJ's determination that Claimant does not suffer a severe impairment to his cervical spine is supported by substantial evidence.

Claimant's arguments regarding the ALJ's step 2 determination that he did not suffer a severe impairment to his cervical spine are largely based on the low evidentiary threshold that exists at step 2. (*See* ECF No. 7 at 12-18.) Claimant argues, among other things, that step 2 presents only a *de minimus* burden to weed out groundless claims. (*Id.* at 17.) However, step 2 is an independent step nonetheless, and the ALJ's determination that Claimant does not suffer a severe impairment to his cervical spine is supported by substantial evidence.

The Court recognizes—and, in fact, the ALJ recognized—that there is evidence in the record of a cervical spine injury. Claimant appears to contend that the ALJ did not consider some of the evidence regarding the severity of that injury. (*Id.* at 18-19.) However, the record reflects that the ALJ did consider the evidence of the severity. The ALJ specifically cited the December 2005 MRI scan that "showed only mild disc bulges at the C3-4 and C5-6 levels with no evidence of cord abnormality or foraminal encroachment." (Tr. 21.) The ALJ also considered the opinion of Dr. Cohen, a treating orthopedist at the Spine Institute, who opined that the results of the MRI were "physiologically benign." (Tr. 21; Tr. 592.)

Plaintiff argues that the ALJ's decision must be remanded because the ALJ did not consider

EMG/NCV[6] evidence in the record.  First, there is no requirement for the ALJ to quote every page of Claimant's medical history in support of a decision.  Second, and more importantly, the question for this Court is whether the ALJ's determination is supported by substantial evidence.  The evidence cited by the ALJ is substantial in support of a finding that the cervical spine injury was "mild" or "benign"—*i.e.*, not "severe."   Third, the January 2006 cervical spine EMG study was found to be indicative of left sided nerve root irritation only but there is no indication in the EMG report of cervical radiculopathy.  And finally, the physical examinations over the year following the alleged injury[7] showed "relatively mild cervical-related examination findings with claimant having some pain and tenderness but a full range of cervical motion, normal motor strength in his upper extremities, no sensory deficits (with one finding of increased sensation), and symmetric reflexes in the upper extremities."  (ECF No. 13 at 9 (citing Tr. 189-90, 225, 460, and 482).)

Therefore, the ALJ's determination that Claimant did not suffer a severe impairment to his cervical spine prior to December 31, 2005 is supported by substantial evidence.

### 3.     The ALJ's determination at Step 3 regarding the Commissioner's listings is supported by substantial evidence.

Claimant argues regarding step 3 that the ALJ's comparison to the listings was insufficient.  However, in evaluating the ALJ's decision on step 3, this Court looks at the ALJ's decision as a whole.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ([The case law] does not require

---

[6] "EMG" stands for "electromyography" and "NCV" stands for "nerve conduction velocity."  Both refer to testing done to evaluate problems related to nerves and muscles.

[7] For an impairment to be disabling, it must cause a claimant to be unable to perform substantial gainful activity for a continuous period of not less than 12 months.  *See Barnhart v. Walton*, 535 U.S. 212-216-20 (2002); *see also* 42 U.S.C. § 423.  Thus, in the present case, because the date last insured was December 31, 2005, the relevant time period can only extend through December 31, 2006.

the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the case law] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."). The ALJ's opinion contains the step 3 conclusion that Claimant did not have an impairment that medically equals one of the listed impairments. (Tr. 21 at ¶ 4.) However, the ALJ's discussion of step 2 contains a detailed analysis of Claimant's impairment. (Tr. 20-21 at ¶ 3.) That analysis was sufficient to form the foundation for the ALJ's conclusion regarding step 3. The Court finds that it would promote form over substance to require that the ALJ simply repeat the language from the step 2 analysis verbatim in the step 3 conclusion.

Claimant bears the burden of presenting evidence in support of his allegation that his impairment meets *all* the criteria of the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). Thus, a determination that one criterion is missing is sufficient for a finding that the impairment is not medically equivalent to the listing. Here, the ALJ found that Claimant did not meet the criteria of nerve root compression or neurological deficits required for section 1.04(A). That finding is supported by substantial evidence.

Importantly, Claimant's argument pertaining to the neurological deficits is based almost entirely on evidence from a May 28, 2007 neurologic examination. (*See* ECF No. 7 at 22-23 (citing Tr. 229-30).) However, as discussed above, this evidence is not indicative of whether Claimant became disabled prior to the critical December 31, 2005 date. Thus, substantial evidence supports the ALJ's finding that the neurological deficits required for section 1.04(A) were not met prior to December 31, 2005.

Furthermore, the Court finds that substantial evidence supports the ALJ's finding that there

was no nerve root compression. While Claimant repeatedly relies on the appearance of the term "radiculopathy" one time in the record (*See* Tr. 201), Defendant points to numerous pieces of evidence in the record that demonstrate a lack of nerve root compression. (*See* ECF No. 13 at 10 (citing Tr. 200-202, 206, and 441).)

### 4.      The ALJ's determination of Claimant's RFC is supported by substantial evidence.

Claimant contends that the ALJ's determination of the RFC was not supported by substantial evidence and was not fully explained. However, Claimant again disregards the critical December 31, 2005 date. The only issue is Claimant's RFC as of December 31, 2005. The ALJ properly concluded that during the relevant time period, "through [Claimant's] date last insured of December 31, 2005," Claimant's impairments did not preclude him from performing the full range of light work.

Defendant points to numerous pieces of evidence in the record demonstrating Claimant's functional capacity up to and including December 31, 2006.[8]  During that time, Claimant's examinations showed that he was alert and fully oriented, had normal gait, had the ability to heel and toe walk, had intact cranial nerves, had full 5/5 strength in his upper and lower extremities, no sensory loss, symmetric reflexes, and negative straight leg raising/positive straight leg raising at 90 degrees. (*See* ECF No. 13 at 14 (citing Tr. 190, 224-25, 460, 481-82).)  The ALJ specifically noted that Claimant's treating doctor, Dr. Su Khanathan, reported that Claimant "had a good response to physical therapy." (Tr. 22.)  The ALJ also discussed the diagnoses and report of Dr. Todd Koppel, who treated Claimant in the latter part of 2006.  Dr. Koppel's report as of November 3, 2006

---

[8] As noted above, to be eligible for benefits, a claimant must be continuously unable to engage in substantial gainful activity for a period of 12 months. *Supra*, note 7.

demonstrated that Claimant had undergone treatment in the lumbar region, which had led to "definite improvement." (Tr. 213.) Dr. Koppel stated that, while there was still pain, "the sharp and shooting component ha[d] ceased" and "[Claimant] may be 75% improved overall." (Tr. 213.) Dr. Koppel stated that pain "still comes with more strenuous or prolonged activity [but] his range of motion and functional level has improved, since completing the treatment." (Tr. 213.)

The ALJ considered the one piece of opinion evidence related to the relevant period, the General Medical Report of Dr. Khanthan who saw Claimant two-to-three times per week during the relevant period. (*See* Tr. 208.) Dr. Khanathan's opinion was that Claimant had no limitations in any of the work-related categories ("Lift and Carry," "Stand and/or Walk," "Sit," "Push and/or Pull," and "Other.") (Tr. 208-09.) And, in fact, the ALJ afforded the opinion evidence no weight. (Tr. 23.) The other opinion evidence in the record does not pertain to the relevant time period.

While Claimant argues that the ALJ merely made a summary conclusion regarding Claimant's subjective statements, in actuality, the ALJ did consider Claimant's subjective complaints about pain as compared with the medical evidence *during the relevant time period.* (*See* Tr. 22-23.) The ALJ explicitly stated that Claimant's statements concerning intensity, persistence and limiting effects were not credible as pertaining to the relevant time period. (Tr. 22.) There is ample evidence in the record demonstrating that the neurological findings did not corroborate Claimant's subjective statements concerning his pain.

Claimant makes contentions regarding his RFC in 2007 and 2008. However, as Defendant argues, these contentions support—rather than contravene—the ALJ's decision. The ALJ made a determination regarding Claimant's RFC in the two relevant time periods—prior to December 31, 2005 and after October 30, 2008. The ALJ made no determination regarding Claimant's condition and/or RFC in 2007 and 2008 because such a determination would be

irrelevant, since Claimant was not eligible for DIB or SSI during that time.

Thus the ALJ's determination of Claimant's RFC is consistent with the substantial evidence which demonstrates that through December 31, 2005, Claimant had an RFC to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), Claimant's condition worsened over the course of 2007-2008, which resulted in the need for subsequent surgeries, which ultimately led to a lesser RFC and mental impairment, rendering Claimant disabled as of October 30, 2008, the earliest date for which Claimant was eligible for SSI.

## V.    **CONCLUSION**

For the foregoing reasons, the Court will affirm the ALJ's decision. An appropriate order accompanies this Opinion.

DATED: December 14, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**